UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM F. ANTHONY,

              Plaintiff,

   v.

MASON COUNTY, et al.,

              Defendants.

CASE NO. 13-5473-BJR

MEMORANDUM ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Plaintiff William Anthony (hereinafter, "Anthony") brings this action under 42 U.S.C. Section 1983, alleging that Mason County along with several defendants in the Mason County Department of Community Development (hereinafter, "the Department") violated his Fourteenth Amendment Equal Protection rights by arbitrarily denying his building permit applications over a period of years. (Doc. No. 27). Defendants Rebecca Hersha and Grace Miller, the development planners who processed his applications, are being sued in their individual capacity only. (*Id.*). Defendant Barbara Adkins, the Department Director, is being sued in both her individual and official capacities. (*Id.*). Anthony also alleges that Defendant Mason County violated the Washington Public Records Act, 42.56 RCW, by failing to give him certain documents. (Doc. No. 27). Defendants now move for summary judgment. (Doc. No. 33). Anthony opposes the motion. (Doc. No. 34). After reviewing the briefs and all other relevant material properly before the Court, the Court GRANTS Defendants' motion for summary judgment. The Court's reasoning follows:

1

I.       BACKGROUND

A.  Abandonment of First Permit

In 2004, Anthony applied for a permit to build a detached garage and art studio ("the garage") on his lakefront lot at 1951 Mason Lake Drive E, Grapeview, Washington (the "lot"). (Doc. No. 33 at 3). Anthony's lot is an irregular "flag shape" with a different width, when measured from East to West, in each section of the property: the north section of the property is roughly 98 feet wide; the "middle section" of the property is roughly 70-80 feet wide; and the south section of the property is roughly 25 feet wide. (Doc. No. 35, Ex. B, at 2-3).

Anthony's lot is zoned "Rural Residential 5." Under the Mason County Code, a "Rural Residential 5" lot is subject to a "setback" requirement of 20 feet, i.e., any new structure must be at least 20 feet away from the ends of the property. (Doc. No. 33 at 2). The proposal Anthony submitted to the Department placed the garage in the southwestern corner of the middle section, with an eight-foot setback from the western edge of the property and a five-foot setback from the southern edge of the property. (Doc. No. 34 at 3). Since the setbacks were less than 20 feet, Anthony requested an administrative variance. (*Id.*). The Department granted the requested variance. (Doc. No. 34 at 2). However, Anthony chose not to use the permit; the permit expired in 2006. (Doc. No. 27 at 5-7).

B.  Denial of Second Permit Application

On April 28, 2008, Anthony submitted a second permit application for the same garage. (Doc. No. 34 at 4). His proposal contained the same setbacks of eight and five feet. (*Id.*).

Defendant Rebecca Hersha, a planner in the Department, handled the application. (Doc. No. 34 at 4). During the review process, Anthony's neighbors, the Coopers, complained to

Hersha that the garage would obstruct their view of the lake. (*Id*.). Hersha denied Anthony's administrative variance request, finding that the application was "not a reasonable development proposal" because the garage was too large. (*Id*.; Doc. No. 34, Ex. F).

Anthony appealed the variance denial to the Hearing Examiner. (Doc. No. 34 at 5). A hearing was held in January 2009. (*Id*.). During the hearing, the Coopers, along with nine other neighbors, testified that Anthony's garage would block their view of the lake and diminish property values. (Doc. No. 35, Ex. G). The Hearing Officer found that the Department erred in rejecting the variance based on the size of the garage. (Doc. No. 35, Ex. H., at 5:22-23). However, the Hearing Officer upheld the denial of the variance on the grounds that the garage would negatively impact views and property values in the area. (*Id*. at 6:1-3)("The view impacts would be significant and severe.").

Anthony appealed the Hearing Examiner's decision to the Mason County Superior Court; the Superior Court affirmed the decision. *See* Mason County Sup. Ct. Case No. 09-20069-3. Plaintiff then appealed the Superior Court decision to the Washington State Court of Appeals. (Doc. No. 33 at 5). The Court of Appeals unanimously affirmed, holding that the effects on the Coopers' view and property value were "certainly reasonable considerations" in determining whether a variance should be granted. *Anthony v. Mason County*, 158 Wn. App. 1052 (2010). Anthony petitioned the Washington Supreme Court for review; the petition was denied in March 2011. *Anthony v. Mason County*, 171 Wn.2d 1013 (2011).

C.  <u>Withdrawal of Third Permit</u>

Anthony submitted a third permit application in March 2012. This proposal included eight-foot setbacks on both the southern and western property lines. (Doc. No. 34 at 6). On April 9, 2012, Anthony submitted a variance request, which Hersha handled. (*Id*.).

Anthony asserts that Hersha's Staff Report mentioned, for the first time, that the Mason County Code provided an exception to the 20-foot setback requirement. If the lot width is less than 100 feet wide, the length of the setback need only be equal to 10% of the lot width. (*Id*.).[1] However, Hersha did not explain why this exception did not apply to Anthony's lot, nor does it state the lot width at the relevant point.

According to Anthony, Hersha also "reached out to a known development" activist named John Diehl about Anthony's application and shared her Staff Report with him. (Doc. No. 34 at 6). Diehl and several other neighbors testified in opposition to Anthony's request during a variance hearing held on July 20, 2012. (*Id*.). Anthony withdrew his permit request before any ruling was issued. (Doc. No. 35, Ex. J).

D.  Initial Denial of Fourth Permit Application

Anthony submitted his fourth permit application on July 24, 2012. This application included setbacks of ten feet. (Doc. No. 34 at 8). According to Anthony, he did not request a variance because the lot width was less than 100 feet and, therefore, he was entitled to the setback exception. (*Id*.).

On August 2, 2012, Hersha, who was handling this new application, informed Anthony that she would deny his application. (Doc. No. 35, Ex. L). According to Hersha, Anthony was not entitled to the exception because the lot width was over 100 feet. (*Id.*). Anthony asked Hersha's supervisor, Defendant Barbara Adkins, to assign the case to someone else. (Doc. No. 34 at 8). Adkins assigned the application to Defendant Grace Miller. (*Id*.). Miller found that Anthony was not entitled to the exception because the lot width was more than 100 feet. (*Id*.).

---

[1] Anthony also asserts that the Staff Report stated that the lot width near the garage is 98 feet. (Doc. No. 35, Ex. K, at 5). However, the Staff Report clearly says that the 98-foot measurement relates to the "existing garage" connected to his house and located elsewhere on the lot.

In arriving at her decision, Miller had measured the lot width for the setback on the southern side perpendicularly with respect to the abutting property.  (Doc. No. 35, Ex. R, at 8:19-21).

Anthony appealed the decision to the Hearing Examiner.  The Hearing Examiner ruled that Miller used the wrong method for determining lot width.  (Doc. No. 35, Ex. Q, at 8:19-21).  According to the Hearing Examiner, the Mason County Code "clear[ly] and unambiguous[ly]" incorporated the method for measuring lot width set forth in *The New Illustrative Book of Development Definitions*, (hereinafter, *Moskowitz*) which provides that lot width is measured in a parallel orientation with respect to the street not, as Milller had measured it, perpendicular to the abutting property.  (*Id*.).   Applying this method to the lot, the Hearing Examiner found that the lot width was less than 100 feet.  (Doc. No. 35, Ex. L, at 8:19-21).  Based on this interpretation, the Hearing Examiner found that Anthony should receive the permit.  (*Id*.).

E.   Temporary Withholding of Permit

On November 28, 2012, Miller informed Anthony that the Department would wait until the end of the 21-day "appeal period" before issuing the permit.  (Doc. No. 33 at 10).  An hour after being informed of this decision, Anthony's attorneys called the Department to object.  According to Anthony, Miller and Adkins then called four different sources to determine whether they were correct in temporarily withholding the permit.  (Doc. No. 34 at 9).  An hour after Anthony's attorneys called, Miller informed Anthony that the Department would release the permit immediately.  (*Id*.; Doc. No. 35, Ex. O).  The permit was issued the following day.  (Anthony Dep. Tr. at 91:1-7).

On June 14, 2013, Anthony brought this action under 42 U.S.C. Section 1983, alleging that Defendants intentionally singled him out and irrationally discriminated against in the processing of his applications and the withholding of his permit, in violation of his Equal

Protection rights under the Fourteenth Amendment. (Doc. No. 27 at para. 11). Anthony also claims Defendant Mason County violated Washington's Public Record Act by failing to turn over certain documents. On May 29, 2014, Defendants moved for summary judgment. (Doc. No. 35).

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not sufficient to create a genuine issue of material fact. *Id.* at 252.

## III.    ANTHONY'S FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIMS BROUGHT UNDER SECTION 1983

42 U.S.C. Section 1983 affords individuals a private cause of action against a government official who, under the color of state law, deprives him of a constitutional right. Anthony's Section 1983 claims allege that Defendants' treatment of his second, third, and fourth permits violated his rights under the Equal Protection clause of the Fourteenth Amendment.

An equal protection claim premised on unique treatment rather than on a classification is described as a "class of one" claim. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). To make a "class of one" equal protection claim a plaintiff must establish that

defendants: (1) intentionally treated him (2) differently than other similarly situated individuals (3) without a rational basis.  *Gearhart v. Lake Cnty., Mont.,* 637 F.3d 1013, 1022 (9th Cir. 2011); *Reiber v. City of Pullman*, 918 F. Supp. 2d 1091, 1105 (E.D. Wash. 2013).

The Ninth Circuit has held that a plaintiff can rebut a defendant's asserted reasons at the summary judgment stage by providing evidence that the proffered reasons are "pretext for an impermissible motive."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008)(emphasis removed); *Squaw Valley,* 375 F.3d at 945-46.  "Simple frustration" is not enough to support a finding of an impermissible motive; the plaintiff must supply evidence that defendant acted out of personal animosity toward the plaintiff.  *See Squaw Valley,* 375 F.3d at 945 (finding animus when defendant demonstrated "disgust" and "hostility" toward plaintiff).

A. <u>Claims Related to the Second Permit and Third Permit Should Be Dismissed</u>

Anthony filed this action on June 14, 2013.  (Doc. No. 1).  The statute of limitations for a Section 1983 claim is three years.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).  Accordingly, the Court finds that all Section 1983 claims based on actions occurring before June 14, 2010, including the denial of the second permit application, are barred by the statute of limitations.

According to Defendants, Anthony cannot bring a claim for actions related to the third permit because he withdrew this application before a final decision was issued.  (Doc. No. 33 at 14).  Anthony does not address this argument or demonstrate how he was "hurt by the claimed wrongs."  *See Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 707 (1997).  Accordingly, the Court dismisses Anthony's claims related to the treatment of third permit application, including Hersha's "reaching out" to Diehl.

B. <u>Department's Denial of the Fourth Permit Was Not an Equal Protection Violation</u>

According to Anthony, Defendants violated his rights under the Equal Protection clause of the Fourteenth Amendment by arbitrarily denying his request for a setback exception that had been previously conferred on other similarly situated permit applicants.  (Doc. No. 34 at 12).

*1. Anthony Fails to Identify Any Similarly Situated Individual Who Received Different Treatment*

In order to support a finding that Defendants treated similarly situated individuals differently, Anthony must provide some evidence that Defendants approved other permits that were identical in all relevant aspects.  *See Thornton,* 425 F.3d at 1167; *Jones v. City of Modesto*, 408 F. Supp. 2d 935, 957 (E.D. Cal. 2005) (a similarly situated individual must be "prima facie identical in all relevant respects").

Anthony has put forward three individuals he claims are similarly situated to him because they each requested permits with setbacks of less than 20 feet on lots zoned Rural Residential 5: Alan Duback, Richard Scott, and William Rill.  (Doc. No.  34 at 16-17).

Defendants counter that Rill's, Duback's and Scott's applications differ from Anthony's application because applications that are opposed by the community require more scrutiny for compliance with the law than unopposed applications. (Doc. No. 33 at 11-12).  The Court agrees.  The presence of community opposition is a relevant difference in the enforcement of land use laws.  *See, e.g. Kolstad v. Cnty. of Amador*, 2013 WL 6065315, at *7 (E.D. Cal. Nov. 14, 2013) (citizen complaints a differentiating factor); *Jensen v. County of Sonoma*, 2010 WL 2330384, at *8 (N.D. Cal. June 4, 2010) *aff'd,* 444 F. App'x 156 (9th Cir. 2011) (community opposition is a differentiating factor).  The record shows that several members of the community opposed Anthony's application and even testified during a hearing regarding the property values

and effects. In contrast, nothing in the record suggests that Rill's, Duback's, or Scott's applications were opposed.[2]

Even without the differentiating factor of community opposition, it is clear that these proffered comparators are not similar. Anthony also asserts that Duback is similarly situated because the visual similarities between his lot and Anthony's are "striking." (Doc. No. 34 at 16). Defendants counter that Duback is not similarly situated because, unlike Anthony, Duback was entitled to the exception under *either* the parallel or perpendicular measurement method. (Doc. No. 33 at 11, 19-20). Anthony fails to respond to this argument.

Similarly, Anthony has failed to provide sufficient evidence to support a finding that Duback was treated differently. Since Duback was entitled to the exception under either interpretation of lot width and Anthony was not, Defendants' decision to give a permit to Duback is insufficient to demonstrate that Defendants applied a different interpretation of lot width to Anthony's application. Nor does Anthony point to any other evidence in the record that would tend to show that Defendants used the parallel method when measuring the irregularly shaped portion of Duback's lot. Anthony's Amended Complaint states that Defendants used a different definition for other lots; however, he does not identify that definition or provide evidence that it was used. This is not enough at the summary judgment stage. *See* Fed. R. Civ. P. 56 (non-moving party must point to evidence in the record). In fact, Duback's permit application actually shows a line drawn perpendicularly with respect to the abutting property at the irregularly shaped section, suggesting that the irregular section of the lot was measured in a similar fashion to Anthony's. (Doc. No. 35, Ex. U, at 6).

---

[2] In fact, when examining the denial of Anthony's second permit, the Washington State Court of Appeals held that the effects on neighbors were "certainly reasonable considerations." *Anthony v. Mason County*, 158 Wn. App. 1052, 1056 (2010).

Anthony asserts that Scott's application is similar because he requested a setback of less than 20 feet. (Doc. No. 34 at 16). However, the record makes clear that Scott's application was not similar: Scott sought a variance not an exception. (Doc. No. 35, Ex. X, Ex. Y).

Anthony's opposition brief does not address whether Rill is similarly situated or what ways he was treated differently. Therefore, the Court finds that Anthony has conceded that Rill is not a proper comparator.

Accordingly, the Court finds that Anthony has not shown that he was treated differently from similarly situated individuals.

2. *Anthony Has Failed to Create Dispute of Material Fact Concerning Pretext*

    a. <u>Defendants Have Articulated a Rational Basis for their Actions</u>

Once a defendant articulates a rational basis for its treatment, the plaintiff must rebut the defendant's rationale by supplying evidence that the asserted reason is pretext for an impermissible motive. *Lazy Y Ranch Ltd.*, 546 F.3d at 591.

According to Defendants, the presence of community opposition was a rational basis for scrutinizing the fourth permit application more closely than his first application or other applications. (Doc. No. 37 at 6). Community opposition that relates to a legitimate state concern is a rational basis for disparate treatment. *See Scott v. City of Seattle*, 99 F. Supp. 2d 1263, 1271 (W.D. Wash. 1999); *Burch v. Smathers*, 990 F. Supp. 2d 1063, 1076 (D. Idaho 2014); *Sylvia Development Corp. v. Calvert County*, 48 F.3d 810 (1995). The record shows that the community opposed the garage because it would obstruct views, thereby decreasing property values and causing aesthetic harm. *See, e.g.*, Doc. No. 34 at 5-6. Property values and aesthetic issues have been recognized as legitimate issues of state concern. *Anthony v. Mason County*, 158

Wn. App. 1052, 1056 (2010); *Harlen v. The Incorporated Village of Mineola*, 273 F.3d 494, 501 (2d Cir. 2001).

Defendants also assert that their decision to deny Anthony's application based on their interpretation of lot width, while mistaken, was not irrational. (Doc. No. 37 at 18). Anthony counters that Defendant's mistaken interpretation cannot form a rational basis for denying his application because the Mason County Code clearly "defined lot width." (Doc. No. 34 at 9, 12). However, the Mason County Code does not provide a definition of lot width. Instead, the Hearing Examiner, after analyzing the preamble to the Mason County Code "Definitions" section, determined that the definition of lot width is properly understood with reference to a separate document, entitled *The New Illustrative Book of Development Definitions.* (Doc. No. 35, Ex. Q, at 6-7).

According to Anthony, the Hearing Officer held that the Mason County Code "clear[ly] and unambiguous[ly]" stated that lot width is measured in a parallel orientation with respect to the street not, as Miller had measured it, perpendicular to the abutting property. (*Id*.). The Court disagrees. The Hearing Examiner only found only that the *Moskowitz* definitions were clearly applicable to this case, not that the proper measurement of an irregularly shaped lot using these definitions was clear and unambiguous. (Doc. No. 35, Ex. Q, at 9). Moreover, it is clear from the record that measurement of the "lot width" on an irregularly shaped lot with multiple sides was unclear and, in fact, required further interpretation. As Defendants point out, Anthony, Defendants, and the Hearing Examiner each interpreted the lot width measurement differently in this case, demonstrating the need for interpretation. (Doc. No. 37 at 5). Anthony does not address these differences in interpretation. Further, the mere fact that a Hearing Examiner

11

disagreed with Defendants' interpretation of a term is insufficient to support a finding that Defendants' actions were irrational.

Defendants further assert that the proper application of the exception in this case was unclear because it conflicted with the purpose of the exception. (Doc. No. 33 at 12). The Hearing Examiner noted that the purpose of the exception was to "provide extra space for developments in narrow lots," not extra space for large lots that happened to narrow in specific points, such as Anthony's. (Doc. No. 35, Ex. Q, at 9). Anthony does not address this point.

b. Anthony Has Provided No Evidence of Impermissible Motive

"Simple frustration" is not enough to support a finding of an impermissible motive; the plaintiff must supply evidence that defendant acted out of personal animosity toward the plaintiff. *See Squaw Valley,* 375 F.3d at 945 (finding animus when defendant demonstrated "disgust" and "hostility" toward plaintiff).

According to Anthony, Defendants Hersha, Adkins, and Miller had improper motives. (Doc. No. 34 at 21). Anthony asserts that Defendants were "poisoned against" him because they read the "flood" of community complaints about Anthony's permit application. (Doc. No. 34 at 21). The Court finds that consideration of community complaints does not support animus. Far from being a demonstration of animus, the case law makes clear that community complaints are an appropriate consideration for a permit-granting authority. *See, e.g. Jensen v. County of Sonoma*, 2010 WL 2330384, at *8 (N.D. Cal. June 4, 2010) *aff'd,* 444 F. App'x 156 (9th Cir. 2011) (community opposition can be a rational basis for differential treatment factor); *Kolstad v. Cnty. of Amador*, 2013 WL 6065315, at *7 (E.D. Cal. Nov. 14, 2013) (same); *Burch*, 990 F. Supp. 2d at 1076.

Anthony further asserts that a jury could infer that Hersha, Adkins, and Miller acted out of animus because Anthony had "doggedly" opposed the Department in the past. (Doc. No. 34 at 21). The Court holds that evidence that Anthony "battled" with the Department on several occasions is insufficient to support a finding of personalized animus or improper motive. An alternative holding would find a *prima facie* case of discrimination any time a "dogged" opponent of the Department was denied a permit.

C. Temporarily Withholding the Permit Is an Not Equal Protection Violation

According to Anthony, Miller's and Adkins's decision to temporarily withhold the permit constituted an equal protection violation. (Doc. No. 34 at 19). Defendants counter that there was a rational basis for temporarily withholding the permit, i.e. they were unsure how to handle the Land Use Petition Act's 21-day appeal period, which might call into question the legitimacy of the permit. (Doc. No. 33 at 10). Similar to the "lot width" error, the Court finds that this mistaken interpretation does not rise to the level of an irrational or arbitrary action.

D. Adkins, Miller, and Herhsa Are Entitled to Qualified Immunity

Government officials are entitled to qualified immunity if their actions do not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *A & S Surplus, Inc. v. City of Lakewood*, 2014 WL 5152113, at *3 (W.D. Wash. Oct. 14, 2014). For a constitutional right to be clearly established, it must have been "clear to a reasonable person that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). "An officer who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Boyd*, 374 F. 3d at 781.

Anthony asserts that Adkins, Miller, and Hersha are not entitled to qualified immunity because his right to not be arbitrarily singled out for disparate treatment was clearly established.

13

(Doc. No. 34 at 15). Defendants counter that the relevant inquiry is not whether the broad right to equal protection is well-established but whether the Defendants had fair warning that their specific actions in this case violated the law. (Doc. No. 37 at 10). Defendants are correct. *See Saucier*, 533 U.S. at 202 (must be "clear to a reasonable person that his conduct was unlawful in the situation he confronted").

As Defendants contend, Adkins, Miller, and Anthony are entitled to qualified immunity because at the time of the incident they did not have fair warning that denying and later withholding Anthony's permit violated Anthony's Equal Protection rights under the Fourteenth Amendment. (Doc. No. 37 at 10). A defendant in a class-of-one action is entitled to qualified immunity unless the matter involves "a clear standard against which departures, even for a single plaintiff, could be readily assessed." *See Enquist*, 533 U.S. at 602. For the reasons set forth *supra*, the standard for granting permits to an irregularly shaped lot under the setback exception was not clear.

E. Anthony Has Not Established *Monell* Liability

Anthony seeks to hold Mason County liable for the actions of Adkins, Miller, and Hersha. In a 42 U.S.C. Section 1983 case, a municipality can only be found liable for the actions of its employees when the municipality itself causes or endorses the constitutional violation through: 1) an official policy; 2) longstanding practice or custom that serves as the municipality's standard operating procedure; 3) an act of an "official whose acts fairly represent official policy;" or 4) an official with final policy-making authority delegated that authority to or ratified the decision of a subordinate. *See Price v. Sery*, 513 F. 3d 962, 966 (9th Cir. 2008).

Anthony asserts that Mason County delegated final policy-making authority to Adkins, the Director of Community Development. (Doc. No. 34 at 23). According to Anthony, Adkins

had final policy-making authority because she has an "extremely high level of autonomy with regard to how the Department is run" and how permit applications are recommended for approval within the Department. (Doc. No. 34 at 23). Defendants counter that Adkins' ability to "recommend" results does not constitute final policy-making authority for the purposes of municipal liability because her decisions are subject to approval and review. (*Id*.). The cases support Defendants' position. When an individual's "decisions are constrained or subjected to review by authorized policymakers," she does not have "*final* policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 113 (1988).[3] The Court holds that Anthony has failed to establish any of the requisites for holding Mason County liable.

IV. PUBLIC RECORDS ACT CLAIM

    Anthony's remaining claim is a state law claim under the Public Records Act. Anthony asks that the Court exercise supplemental jurisdiction over this claim. 28 U.S.C. Section 1367(a). Section 1367 (c) provides that a district court "may decline to exercise its supplemental jurisdiction over a claim" if "the district court dismissed all claims over which it has original jurisdiction." This Court has dismissed all claims over which it has original jurisdiction. Accordingly, this Court declines to exercise supplemental jurisdiction over Anthony's state law claim. *See, e.g.Long v. Cnty. of Fresno*, 2014 WL 3689694, at *7 (E.D. Cal. July 24, 2014).

---

[3] Defendants further point to the provision of the Mason County Code, stating: Mason County's County Commissioners retain final policy-making authority. (Doc. No. 33 at 23).

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. Defendants' Motion for Summary Judgment is GRANTED;

2. Plaintiff's Section 1983 claims are DISMISSED; and

3. Plaintiff's state law claim is DISMISSED without prejudice.

DATED this 11th day of December, 2014.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE